# Wilmington and Reading Railroad Co. *versus* High.

A railroad company gave a bond to plaintiff to secure the payment of damages which plaintiff might sustain by reason of the location of the railroad through his farm.   On the back of the bond was a stipulation, that if from any cause, the quantity of land and fencing through the property, required by the location of the road as at present located, should be changed or lessened, that a stated deduction should be made from the face of the bond.   In debt upon the bond, the company offered to prove that the land actually taken for their road was materially lessened from the quantity named in a draft annexed to the bond.   This evidence was rejected by the court below.   *Held,* that it should have been admitted for the purpose of showing defalcation both as to quantity of land and amount of fencing.

March 3d 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas of *Berks county :* of July Term 1878, No. 77.

Debt by Ezra High, against the Wilmington and Reading Railroad Company, Edward Brooke and Hugh E. Steele.

This was an action of debt on a joint and several bond for $8000, dated May 8th 1872, and payable April 5th 1873, with interest, executed by the Wilmington and Reading Railroad Company, Edward Brooke and Hugh E. Steele, in favor of Ezra High.   It was given to secure Mr. High the payment of the damages which it was agreed he would sustain by reason of the location of the railroad of said company through his premises, and was accompanied by a draft of the proposed route of the road over the same.   The following stipulation was written on the bond :

" The within bond has been given in payment for lands taken according to the annexed draft ; and if from any cause the quantity of land and amount of fencing through the property of Ezra High, required by the location of the Wilmington and Reading Railroad as at present located, shall be changed or lessened, then a deduction

of $300 per acre and $1.25 per ten feet of fence shall be made from the face of the within bond."

There was also an endorsement on the bond of the payment of interest as follows :

" Received June 18th 1873, of the Wilmington and Reading Railroad Company, four hundred and twenty dollars, being the interest on seven thousand dollars for one year to May 8th 1873.

$420.00.                                      EZRA HIGH."

In 1871, when the branch of the Wilmington & Reading Railroad, extending from Birdsboro' to Reading, a distance of eight miles, was about to be constructed, the route was located from Birdsboro' along the right bank of the Schuylkill river, to a point where it crossed to the left bank of the river and entered the land of the plaintiff, through which it passed, first to a point near the Schuylkill, thence north nearly parallel with the river until it approached the Philadelphia & Reading Railroad at the boundary of plaintiff's land. From this point it was intended to run the track along the said P. & R. Railroad to Reading, without again crossing the Schuylkill. This intention was thwarted by the P. & R. Railroad Company, who resisted the engineers of the Wilmington & Reading Railroad Company and prevented them from making a survey and locating the route along their railroad. The W. & R. Railroad thereupon, to wit, on the 3d of October 1871, instituted proceedings in equity in the Court of Common Pleas of Berks county to compel the P. & R. road to desist from interference with the intended location of their road along the left bank of the Schuylkill from High's land to the city of Reading. The equity proceedings were pending before a master when the bond in question was executed by the defendants. The report of the master in favor of the P. & R. Railroad was filed shortly after, subsequent to which nothing further appears to have been done in the suit.

The directors of the Berks County Railroad Company, which had been previously chartered, and was intended to form, with the Wilmington road, a continuous line of railway from the Lehigh river to the Delaware, were awaiting the completion of the branch road from Birdsboro'. to Reading, and as under their charter they had authority to construct a railroad from the Wilmington and Reading Railroad, at or near Birdsboro', to Reading and beyond, they were considering the propriety of building their road southward, to connect with the Wilmington road at some point below the place of resistance by the Reading road; and on the 12th of June 1872, they passed a resolution to extend their road from the city of Reading to a point on the plaintiff's farm, to connect with the Wilmington branch from Birdsboro', and subsequently constructed the same to the point of junction of the two roads on plaintiff's farm, specific

[Wilmington & Reading Railroad Co. *v.* High.]

authority therefor having been granted them at the next session of the legislature.

It was while these several proceedings were in progress that the bond in question was executed and the stipulation written thereon; and as the Wilmington road, notwithstanding its route was originally located through the whole length of the plaintiff's farm, for obvious and apparently justifiable reasons afterwards changed or rather shortened its route on said farm, and thereby lessened both the quantity of land as well as the amount of fencing required, the defendants claimed that under the stipulation on the bond they had a right to a deduction according to its terms.

At the trial, before Sassaman, J., the defendants offered to prove,

1. That the quantity of land taken by the Wilmington and Reading Railroad, in the location and construction of their railroad on the plaintiff's land, was lessened by six and eight-tenth acres from the quantity of land embraced in the original location of said railroad, as shown by the draft of the location attached to the bond offered in evidence.

2. That within the marked lines of said draft, so far as the Wilmington and Reading Railroad has been actually located and constructed on plaintiff's land, only six 31-100th acres are taken by said railroad, instead of thirteen 11-100th acres, as embraced in said draft.

3. That the length of the line of said Wilmington and Reading Railroad, as actually located and constructed on plaintiff's land, is only 2430 feet instead of 5765 feet, as contained in said draft, thereby lessening the distance 3335 feet.

This offer was made, under the stipulation endorsed on bond, to show how much the amount of bond was to be diminished, both as to quantity of land and amount of fencing.

The court rejected the offer, saying:

"1. The court understand the first proposition of the defendants' offer to contemplate a variation of location from the location of the Wilmington & Reading Railroad, 'as at present located,' in the words of the covenant endorsed on the bond. With this view of the first proposition, we think the offer would prove a variation of the original contract, and not only a change or lessening of 'the quantity of land taken and amount of fencing' required. We think this was not contemplated in the covenant.

"2. By the offer in the second proposition, it seems to us there would be proof of actual location and construction different from that contemplated in the express covenant endorsed on the bond, providing only for the elements of damages had in view of a settlement for occupation and use of a location 'as at present located,' at a settlement resulting in the bond in evidence. To allow other deductions than those specially mentioned would necessarily alter and vary the considerations of the bond.

[Wilmington & Reading Railroad Co. *v.* High.]

" 3. If what is contained in the third proposition of the offer to prove had been in the present contemplation of the parties, at the making and execution of the bond, in any way, and at the endorsement entered thereon, this would certainly be admissible; but if what is proposed depends on matters and causes arising thereafter, it would produce a new state of things, leading to entirely different relations from those existing at the execution of the bond, as it appears to us from the terms of the offer, as compared with the terms of the covenant, our ruling must be otherwise. The offer is rejected and bill for defendants."

The verdict was for plaintiff for $10,469.33, and after judgment, defendants took this writ, and, inter alia, assigned for error the rejection of the above offer.

*Horace A. Yundt* and *A. G. Green*, for plaintiffs in error.—The court below assumed that defendants had no right to prove a different location or change of location from that on the draft, and that if they did it was not contemplated by the parties. How could there be a decrease in the quantity of the land and amount of fencing without a change in the location? This was the very object of the stipulation. It contemplated any cause resulting from the necessities or convenience of the company. The court virtually decided that there could be no defence to the payment of the whole amount of the bond.

*George F. Baer* and *H. Van Reed*, for defendant in error.— The reason for this provision no doubt was that the location of the railroad through the land of defendant in error required extensive excavation and embankment, and it was uncertain what quantity of land and fencing would be required. If the parties had contemplated a lessening of the quantity of land by a change of location they would have used apt words to express that intention. The defendants seek to escape the payment of a large part of the damages by setting up an agreement between them and the Berks County Railroad Company, under which their road was only to be completed to an intermediate point on plaintiff's land. Can they be relieved from the payment of their bond by showing such secret arrangement? This would leave the plaintiff without a remedy, for the half of the road for the Berks County Railroad Company is built, and that company is insolvent.

Mr. Justice TRUNKEY delivered the opinion of the court, May 5th 1879.

Had the plaintiff in error taken all the land included in the draft annexed to the bond, its value, together with the value of fencing thereof, as fixed in the endorsed condition, would have been less than $5400. Hence over $2600 were included in the bond for

[Wilmington & Reading Railroad Co. *v.* High.]

injuries other than the value of the land taken and the cost of its fencing. Against this portion there is no provision for defalcation. Nearly one-third of the bond is payable absolutely, though the company should finally occupy little or none of the land then appropriated for their road.

The parties agreed that "if from any cause the quantity of land and amount of fencing," required by the location, should be changed or lessened, that a deduction should be made from the face of the bond, at the rate of $300 per acre, and $1.25 per ten feet of fence. It is scarcely possible to express more distinctly, than does the language of their agreement, that they contemplated a future change of location and diminishing the quantity of land. Ingenuity may suggest a doubt, but cannot obscure the natural import of the words. In absence of proof of surroundings at the making of the contract, the large portion of the bond, payable in any event, and the circuitous route, as then located through the farm, call for adherence to the manifest sense of the words in the contract.

The company offered to prove that the land actually taken for their road was lessened six and eight-tenths acres, from the quantity shown on the draft annexed to the bond, and the length of the line shortened thirty-three hundred and thirty-five feet. When this offer was made, the only evidence before the court was the bond, with the contract endorsed thereon, and the draft thereto annexed. The offer was direct and simple, for the purpose of showing defalcation "both as to quantity of land and amount of fencing," and ought to have been admitted. That it might be successfully answered and overcome by rebutting evidence, the court did not know, and could not, so as to influence its action, from any matter injected into an objection. Its exclusion was to declare that the agreement meant nothing.

Several points were raised in argument, not now in the case, for it comes on the single question, whether the company can defend by reason of a change of location by which the quantity of land was diminished. However, it may not be amiss, in view of what was so earnestly pressed, to remark that the defendant will not be held guilty of a conspiracy, or fraudulent arrangement, with the Berks County Railroad Company, to cheat the plaintiff, without proof. Nor, in absence of evidence thereof, will it be presumed "that the Berks County Railroad was occupying the location of the Wilmington and Reading Railroad under some private arrangement between the two companies." There is no apparent ground for the expressed fears that High has no remedy for damages done by the location of the Berks County Railroad, because of its insolvency. If it is a trespasser ejectment will lie, and recovery of possession by execution will be stayed only upon legal ascertainment of the damages and payment thereof: McClinton *v.* Pittsburgh, Fort

[Wilmington & Reading Railroad Co. *v.* High.]

Wayne & Chicago Railway Co., 16 P. F. Smith 404; Justice et al. *v.* Railroad Co., 6 Norris 28.

But we forbear; too much, perhaps, has been said in advance of what may be developed on another trial.

Judgment reversed, and a *venire facias de novo* awarded.